**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

DARRELL ANDRE FULLER,

       Plaintiff,

       v.

JESUP HEALTH SERVICE, CLINIC
DIRECTOR,

       Defendant.

CIVIL ACTION NO.: 2:16-cv-42

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action contesting conditions of his confinement during his incarceration at numerous federal correctional facilities, including the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). (Doc. 3.) The only claims currently pending in this Court are those against "Jesup Health Service Clinic Director" ("Clinic Director" or "Defendant"). Plaintiff filed his claims against Defendant years after his incarceration at FCI Jesup. Additionally, Plaintiff does not plausibly allege that the Clinic Director violated his constitutional rights. For these reasons, I **RECOMMEND** that the Court **DISMISS** this action, **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal, and **CLOSE** this case.[1]

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the District Court will review de novo properly submitted objections.

# BACKGROUND[2]

Plaintiff originally filed suit in the United States District Court for the Eastern District of Pennsylvania. He alleged, pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), that the "Clinic Directors" at six federal detention facilities ignored his serious medical needs in violation of the Eighth Amendment. (Doc. 3.) These facilities included FCI Fairton in New Jersey; FCI Manchester in Kentucky; FCI Jesup in Georgia; as well as FCI Edgefield, FCI Williamsburg, and FCI Bennettsville in South Carolina. (<u>Id.</u>) Plaintiff also levied claims against Physician Assistant Wickard at FCI Jesup. (<u>Id.</u>) Essentially, Plaintiff claimed that medical professionals at the facilities improperly delayed or denied surgery for orthopedic injuries in his right knee and denied treatment for carpal tunnel syndrome in his right wrist. (<u>Id.</u>)

As to FCI Jesup specifically, Plaintiff was incarcerated at the facility from April 13, 2007 to May 20, 2008; and again from December 11, 2008 to January 15, 2010. (Doc. 3, pp. 12–13; Doc. 39-2.) In 2008, Plaintiff states he went to sick call and the chronic care clinic at FCI Jesup to request treatment for his knee. (<u>Id.</u> at p. 12.) Plaintiff was given a "sleeve knee brace" and he received an MRI examination. (<u>Id.</u>) An MRI revealed two tears in the right knee meniscus. (<u>Id.</u>) Plaintiff requested to be examined by an orthopedic doctor for his pain. (<u>Id.</u>) However, after talking with medical staff — including "Dr. Chip [and] PA Wicker" — Plaintiff's care level was changed from care level two to care level one, and he was transferred to FCI Bennettsville in 2008. (<u>Id.</u>)

---

<u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>see also</u> <u>Glover v. Williams</u>, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at \*1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[2] The Court takes the following facts from Plaintiff's Complaint and accepts them as true, as they must be at this stage.

At FCI Bennettsville, Plaintiff again requested surgery. Plaintiff states that the clinic director at Bennettsville told Plaintiff that the surgery he requested "is elective surgery for a[] knee injury." (Id. at p. 12.) Plaintiff started to file a tort claim regarding his knee injury, at which point his care level was changed from one, back to two, and he was transferred back to FCI Jesup. (Id. at pp. 12–13.) At FCI Jesup, Plaintiff again returned to sick call and to the chronic care clinic to seek treatment for his knee. He also informed PA Wicker of a new injury to his left wrist. Plaintiff received an x-ray of his wrist in 2009 which resulted in a diagnosis of "slack wrist." (Id. at p. 13.) PA Wicker issued Plaintiff a left wrist brace and sent Plaintiff to see the orthopedic doctor in December of 2009. (Id.) Plaintiff states that the orthopedic doctor ordered surgery on the right knee meniscus. (Id.) Plaintiff further states that PA Wicker told him that the paperwork ordering the surgery would follow him to the drug program at FCI Fairton. (Id.) Plaintiff indicated that he wanted to have the surgery immediately, before he had to leave FCI Jesup. (Id.) However, PA Wicker informed Plaintiff that "'the surgery will be done and there is nothing that can be done about the slack left wrist injury right now.'" (Id.) Plaintiff asserts that "PA Wicker and the clinic director put elective surgery in Plaintiff['s] medical file after Plaintiff request[ed] to stay at FCI Jesup for the surgery." (Id.) Plaintiff was then transferred to FCI Fairton in January of 2010. (Id.)

Because none of the institutions identified in Plaintiff's Complaint were located in the Eastern District of Pennsylvania, that court transferred the Case to the District of New Jersey, where the most recent events giving rise to Plaintiff's claims occurred. The Defendants then moved to dismiss Plaintiff's claims against them for, among other reasons, lack of jurisdiction. (Doc. 39.) District Judge Noel L. Hillman granted the Defendants' Motion in part. (Doc. 43.) Judge Hillman dismissed all claims against Defendant Wicker with prejudice for lack of subject

matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). However, rather than dismissing the claims against the five out of state "Clinic Director" Defendants, Judge Hillman transferred those claims to the Defendants' respective districts. Thus, all claims against the Clinic Director at FCI Jesup were transferred to this District. These are the only claims before this Court.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).[3]

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without

---

[3] The Court must also screen any action brought by any "prisoner", that being "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A. Plaintiff was a prisoner at the time he brought this lawsuit. (Doc. 3, p. 1.) However, even if Plaintiff was not a "prisoner", his claims are subject to screening under Section 1915(e)(2), as he is proceeding *in forma pauperis*.

arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Claims against Defendant in his Official Capacity

Plaintiff seeks to hold Defendant Clinic Director liable for violating his Eighth Amendment rights by disregarding Plaintiff's medical needs. It is not clear if Plaintiff sues Defendant in his official capacity or solely in his individual capacity. However, to the extent Plaintiff does attempt to sue Defendant in his official capacity as an employee of the United States, Plaintiff cannot do so.

In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 402 U.S. 388 (1971), the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001). However, "Bivens only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." Sharma v. Drug Enforcement Agency, 511 F. App'x 898, 901 (11th Cir. 2013) (citing Malesko, 534 U.S. at 69–71). Furthermore, a Bivens action cannot be brought directly against the United States or against a federal agency. FDIC v. Meyer, 510 U.S. 471, 472 (1994); Daniel v. United States, 891 F. Supp. 600, 603 (N.D. Ga. 1995) ("A Bivens action is a judicially created remedy against federal actors in their individual capacities and does not create a remedy against the United States.").

Therefore, the Court should **DISMISS** any claims against Defendant in his official capacity.

6

**II.     Dismissal due to Untimeliness**

In his order transferring claims to this Court, Judge Hillman declined to make a finding as to the timeliness of this suit but noted "it appears that the instant Complaint, which is dated May 16, 2012, was filed beyond the applicable statute of limitations." (Doc. 42, p. 23.)  The statute of limitations applicable to 42 U.S.C. § 1983 actions applies to <u>Bivens</u> claims.  <u>Walker v. United States</u>, 196 F. App'x 774, 776 (11th Cir. 2006) (citing <u>Kelly v. Serna</u>, 87 F.3d 1235, 1239 (11th Cir. 1996)).  Because 42 U.S.C. § 1983 does not contain a limitations period, federal courts "borrow" the applicable state's statute of limitations for personal injury actions.  <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."  <u>Powell v. Thomas</u>, 643 F.3d 1300, 1303 (11th Cir. 2011).  In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all Section 1983 actions filed in federal court in that state.  <u>Owens v. Okure</u>, 488 U.S. 235, 236, 249–50 (1989).  Georgia has a two-year statute of limitations for personal injury actions.  O.C.G.A. § 9-3-33.

Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run."  <u>Lovett v. Ray</u>, 327 F.3d 1181, 1182 (11th Cir. 2003).  As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  <u>Id.</u>  Additionally, "[t]o dismiss a prisoner's complaint as time-barred prior to service, it must 'appear beyond a doubt from the complaint itself that [the prisoner] can prove no set of facts which would avoid a statute of limitations bar.'"  <u>Hughes v.</u>

Lott, 350 F.3d 1157, 1163 (11th Cir. 2003) (quoting Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001) (alterations in original)).

Plaintiff signed his Complaint on May 16, 2012. (Doc. 3, p. 15.) Thus, given the two years' limitation period, the earliest operative date for assessing the timeliness of Plaintiff's Complaint is May 16, 2010. Any claims that accrued before that date (or for which the statute of limitations was not tolled until at least that date) are untimely.

Plaintiff was aware of the facts giving rise to his claims against Defendant as early as 2008. At that time, according to Plaintiff, he had been denied treatment at FCI Jesup for his knee injury. (Doc. 3, pp. 12–13.) At the latest, any claims pertaining to any denial of medical care at FCI Jesup accrued in January of 2010 when Plaintiff was last transferred out of that facility. Id. This is, of course, long before the operative date of May 16, 2010.

The Court notes that Plaintiff may have pursued administrative remedies, which could serve to toll the statute of limitations period. "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." Lozano v. Montoya Alvarez, ___ U.S. ___, 134 S. Ct. 1224, 1231–32 (Mar. 5, 2014). In Leal, the Eleventh Circuit Court of Appeals "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." 254 F.3d at 1280. Georgia law does not permit tolling, and the Eleventh Circuit has not addressed this issue directly. Walker, 196 F. App'x at 777 (stating in Bivens case that court has "declined to decide whether the statute of limitations is tolled in a § 1983 case while a petitioner is pursuing administrative

remedies."). However, I conclude, as have several Courts of Appeals, that tolling should apply.[4]

Accordingly, the applicable statute of limitations period was tolled while Plaintiff pursued his

administrative remedies, which was a prerequisite to filing suit because he was imprisoned at the

time giving rise to his Complaint.

Nevertheless, there is nothing in Plaintiff's Complaint which indicates that the exhaustion

of Plaintiff's administrative remedies as to any actions at FCI Jesup took until May16, 2010.[5]

Thus, his Complaint is bereft of any indication that Plaintiff's pursuit of administrative remedies

could render this cause of action timely filed. Hughes, 350 F.3d at 1163 ("[Plaintiff], unlike

Leal, has pointed us to no particular reason why the statute of limitations might be tolled in his

case, and we can discern none from the record.").

Plaintiff's untimely claims are also not saved by the continuing violation doctrine. The

continuing violation doctrine holds that a plaintiff's action is not time-barred where some of the

alleged violations occurred within the statutory period, even though other violations did not,

because the early acts were part of a continuing wrong. Hipp v. Liberty Nat'l Life Ins. Co., 252

---

[4] Nickolich v. Rowe, 299 F. App'x 725, 725–26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state prisoner's Section 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois statute of limitations in a Section 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157–59 (5th Cir. 1999) (same); see also Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations necessarily barred the plaintiff's claims); and Baldwin v. Benjamin, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling but noting that the exhaustion requirement may operate to toll the statute of limitations).

[5] According to materials submitted in support of Defendant's Motion to Dismiss, Plaintiff did not file any grievances regarding his medical care while at FCI Jesup. (Doc. 32-4.) Plaintiff filed a grievance at FCI Bennettsville on August 19, 2008, which was resolved on July 22, 2009. (Id. at p. 3.) He did not file another grievance until he was at FCI Fairton on May 12, 2010.

9

F.3d 1208, 1222 (11th Cir. 2001) ("The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." (internal quotation marks and citation omitted)). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett, 327 F.3d at 1183.

However, the Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1335 (11th Cir. 2006). "The Eleventh Circuit gives considerable weight to plaintiff's awareness of his rights and his duty to bring a timely claim." Watkins v. Haynes, No. CV 212-050, 2013 WL 1289312, at *5 (S.D. Ga. Mar. 27, 2013). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." Hipp, 252 F.3d at 1222. Plaintiff had sufficient knowledge regarding his medical claims as early as 2008 when he contends he was denied treatment for his knee injury. At the very least, Plaintiff's transfer out of FCI Jesup first in May of 2008 and then again in January of 2010 caused the statute of limitations period to begin well before May of 2010. See Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) ("Plaintiff sufficiently alleges in his Complaint a continuing violation that did not end until he was transferred to another prison in May of 2007.").

Thus, the face of Plaintiff's Complaint reveals beyond a doubt that he can prove no set of facts which would avoid a statute of limitations bar as to his Bivens claims against Defendant

Clinic Director.  Consequently, the Court should **DISMISS** Plaintiff's claims that Defendants violated his constitutional rights.

**III.  Dismissal for Failure to State a Claim**

Additional grounds exist for the dismissal of Plaintiff's claims against Defendant Clinic Director.  Plaintiff has not alleged any facts that would plausibly connect Defendant to the alleged failure to provide Plaintiff medical care.  Plaintiff alleges that he was primarily seen by Physician Assistant Wicker while he was at FCI Jesup.  The only allegation that Plaintiff makes against Defendant Clinic Director is that Defendant, along with PA Wicker, "put elective surgery" in Plaintiff's medical file prior to Plaintiff's transfer to FCI Fairton.  This is not sufficient to state a constitutional violation.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of inmates.  The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles.  The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official

acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Though Plaintiff has plausibly alleged he had serious medical needs while at FCI Jesup, he has not alleged that Defendant Clinic Director was deliberately indifferent to those needs. Plaintiff states that he was treated by Physician Assistant Wicker while at FCI Jesup and that he received care including an MRI, an x-ray, examination by an orthopedist, a knee brace, and a

wrist brace. He makes no allegation that Defendant ever directly treated him much less that Defendant denied him treatment or blocked his access to care. The most that Plaintiff alleges is that Defendant characterized Plaintiff's surgery as "elective surgery" before Plaintiff was transferred from FCI Jesup. This hardly rises above the level of gross negligence.

It appears Plaintiff seeks to hold Defendant liable based merely on Defendant's supervisory position at FCI Jesup. However, "[i]t is well established in this circuit that supervisory officials are not liable under Bivens for unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). Plaintiff fails to allege that Defendant Clinic Director personally participated in violating Plaintiff's constitutional rights or any other causal connection between Defendant's conduct and such a violation.

### IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous

13

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** this action, **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal*,* and **DIRECT** the Clerk of Court to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

14

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 19th day of January, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA